lustrate the fact, not that every architect is an artist, but that architecture is itself an art, and that one who follows this profession may achieve the reputation and position of an artist, in the ordinary sense of the term.

We are accordingly of the opinion that the design of the building, which is shown to have been accepted by the Indianapolis Art Association for an art museum, is artistic in character and is a work of art, and that the author of it is an artist, within the meaning of that term as used in the tariff act. The evidence leaves no doubt of the fact that the designer is an American citizen residing temporarily abroad. In re Knoedler, G. A. 4,727, T. D. 22,363, affirmed in Knoedler v. U. S. (C. C.) 113 Fed. 999.

The protest is sustained, and the decision of the surveyor reversed, with instructions to reliquidate the entry.

In his application for review of the foregoing decision the surveyor assigned the following points of error: (1) That the pen and ink drawings of an architect are not works of art within the meaning of said paragraph 703; and (2) that an architect is not an artist within the meaning of the same provision.

Joseph B. Kealing, U. S. Atty., for the surveyor.

ANDERSON, District Judge. The above-entitled cause being an application on behalf of A. A. Young, surveyor of customs at the port of Indianapolis, Ind., for a review of the findings and decision of the Board of General Appraisers upon a protest of the said Arthur Bohn to the assessment of duties upon pen and ink drawings made by him while temporarily residing abroad, and imported to this country as drawings and plans for an art museum at Indianapolis, Ind., the said matter being presented to the court both on behalf of the said Arthur Bohn and the said surveyor of customs, the court finds; that said Arthur Bohn is an architect, a citizen of the United States, and resident of Indianapolis, Ind.; that while temporarily residing abroad he made said pen and ink drawings referred to in the application for review herein and imported them to this country; that they are of the value of 600 francs; that they are "works of art," within the meaning of the tariff law of the United States, and should be permitted to be imported into this country.

It is therefore considered and adjudged by the court that the decision of the Board of General Appraisers, as heretofore made in the said proceedings, be affirmed; and it is so ordered.

---

## UNITED STATES v. COMMERCIAL CABLE CO.

### (Circuit Court, S. D. New York. May 24, 1905.)

### No. 3,756.

CUSTOMS DUTIES—DUTIABLE VALUE—ENTRY ON PRO FORMA INVOICE.

The provision in Customs Administrative Act June 10, 1890, c. 407, § 7, 26 Stat. 134 [U. S. Comp. St. 1901, p. 1892], that duty shall not be assessed on "less than the invoice or entered value," does not prevent assessment on less than the value stated in a pro forma invoice on which entry is made under section 4 (26 Stat. 131 [U. S. Comp. St. 1901, p. 1888]); and where a certified invoice is produced in accordance with the latter section, and the value stated therein is approved by the appraiser, duty may properly be assessed on that value, even though less than that given in the pro forma invoice.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 5,856 (T. D. 25,801).

The opinion of the board reads as follows:

SOMERVILLE, General Appraiser. In this case the goods consist of telegraph instruments imported into the port of New York by the Commercial Cable Company. Entry was made on a pro forma invoice on April 19, 1904; the importers estimating the value of the merchandise at £342. Before any action was taken by the local appraiser toward ascertaining the market value of the goods, and prior to the liquidation of the entry by the collector, the importers produced an invoice, duly certified by the consul, which was filed with the collector on April 21, 1904. On May 3, following, the local appraiser made his return, approving the value named on the certified invoice, and finding that the goods had a foreign market value of £315 3s. 1d., which value is exactly that stated on the certified invoice. The collector, however, assessed duty upon the goods on the basis of the valuation shown by the entry based on the pro forma invoice. The importers contend that the assessment should be made upon the valuation as shown by the consular invoice and the return of the local appraiser.

In our opinion, the protest is well founded, and should be sustained. The rule is well settled that an entry on a pro forma invoice remains "open" until the conditions of the bond for the production of the consular invoice have been fulfilled, or until the bond itself has become forfeited. As stated by Attorney General Devens, 16 Op. Atty. Gen. 158, 161, the statement of value on a pro forma invoice is "wholly that of the importer, made in order to effect an entry." The importer's bond for the production of a duly certified invoice is usually conditioned for the payment of such duties as may be found due above the estimated duties. Customs Administrative Act June 10, 1890, c. 407, § 4, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1888], provides that, "when entry of merchandise exceeding one hundred dollars in value is made by a statement in the form of an invoice [meaning a pro forma invoice], the collector shall require a bond for the production of a duly certified invoice." Unless corrections of value and of liquidation can be made upon the basis of the consular invoice when obtained and approved by the appraiser, the provisions of this section would be nugatory. Where an importer gives a bond for the production of necessary documents, or where the collector waives the giving of such a bond, the importer's rights are preserved. In re Courtin, G. A. 5,089 (T. D. 23,557). An entry made upon a pro forma invoice is necessarily tentative and liable to correction on the production of a corrected invoice, duly authenticated, when filed in time. Carnes v. Maxwell, 3 Blatchf. 420, Fed. Cas. No. 2,417. In Schmeider v. Barney (C. C.) 6 Fed. 150, it was held by Shipman, J., sitting in the United States Circuit Court for the Southern District of New York, that the valuation of imported merchandise should be made on the basis of a corrected invoice, which should have been received by the collector; it having been offered before the appraisement of the goods had taken place. So, in Howland v. Maxwell, 3 Blatchf. 146, Fed. Cas. No. 6,799, it was decided by Judge Betts, sitting in Circuit Court with Judge Nelson, that the plaintiffs in that case had a right to claim that the value of their importations should be made "upon the corrected invoice, and not on the one first produced." He added: "Had the goods been seized for a fraudulent undervaluation, or had an appraisal been made upon the entry before the corrected invoice was produced, the question on this point might stand on different grounds." See, also, Carnes v. Maxwell, 3 Blatchf. 420, Fed. Cas. No. 2,417. In Gillespie v. U. S. (C. C.) 124 Fed. 106, importers of certain sugar in hogsheads made entry on an invoice which included by mistake the value of the hogsheads, which were of American manufacture, in that of the sugar. Before the entry was liquidated they produced a corrected invoice, showing the proper deduction of the value of the hogsheads. It was held by the court that the collector should have made an allowance for the hogsheads, passing them free of duty, in accordance with the showing on the

face of the corrected invoice. The action of the collector was sought to be justified by the provisions of Customs Administrative Act June 10, 1890, c. 407, § 7, 26 Stat. 134 [U. S. Comp. St. 1901, p. 1892], that "duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value." In the case of Gillespie v. U. S. (C. C.) 114 Fed. 1022, decided by Judge Townsend, the record is before us, and our examination of it shows that the importers at the time of entry had given a bond for the production of certain documents necessary to establish the American origin of the goods. These documents were subsequently produced, but the collector refused to regard them, although the proof thus tendered him was in due compliance with the law and the treasury regulations. The court held that the collector's action was erroneous, and that the importers were entitled to the benefit of the proof which they had produced as to the American origin of the articles.

Following the principles settled by the foregoing authorities, we are of opinion that the giving of the bond required by statute preserved the rights of the importers, and left the entry open; it having been made on a mere pro forma invoice. Upon the subsequent production of the consular invoice, and on its approval by the appraiser, the importers were entitled to have the entry liquidated on the basis of the appraised value corresponding with the value shown by the consular invoice.

The protest is sustained, and the decision of the collector reversed, with instructions to reliquidate the entry in accordance with this opinion.

Henry A. Wise, Asst. U. S. Atty.
Frederick W. Brooks, for importers.

TOWNSEND, Circuit Judge. Decision of the board of general appraisers affirmed.

---

UNITED STATES v. MANUFACTURING APPARATUS, ETC., OF NEW JERSEY MELTING & CHURNING CO.

(District Court, D. New Jersey. November 27, 1905.)

INTERNAL REVENUE—FRAUD BY MANUFACTURER OF OLEOMARGARINE—INFORMATION FOR FORFEITURE OF PLANT.

An information for the forfeiture of an oleomargarine plant, under Act Aug. 2, 1886, c. 840, § 17, 24 Stat. 212 [U. S. Comp. St. 1901, p. 2234], is sufficient, which charges in the language of the statute that the claimant was engaged in the business of manufacturing oleomargarine, and defrauded and attempted to defraud the United States of the tax on the oleomargarine produced by it, or a part thereof.

On Demurrer to Information.

John B. Vreeland, for the United States.
Joseph F. Farmer, for respondent.

CROSS, District Judge. An information for the seizure and forfeiture of the defendant's oleomargarine plant is in the words following:

"For that before and at the time of the seizure of the said personal property as aforesaid, the said the New Jersey Melting & Churning Company, at Hoboken, in the district aforesaid, was engaged in carrying on the business of manufacturer of oleomargarine, and did then and there produce a large quantity of oleomargarine, to wit, 28,000 pounds of oleomargarine, then and there subject to the internal revenue tax then imposed by law upon oleomargarine, and that the said the New Jersey Melting & Churning Company, then and there unlawfully did defraud and attempt to defraud the said United States of the said tax on the oleomargarine so produced by it."